IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| and ) | |
| ) | |
| LOUISIANA DEPARTMENT OF ) | |
| ENVIRONMENTAL QUALITY ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.  [_____] |
| ) | Section: |
| v. ) | |
| ) | Magistrate: |
| PCS NITROGEN FERTILIZER, L.P., ) | |
| ) | |
| Defendant. ) | |
| ) | |

CONSENT DECREE

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ................................................................................................6

II. APPLICABILITY ................................................................................................................7

III. DEFINITIONS ..................................................................................................................9

IV. CIVIL PENALTY ............................................................................................................15

V. COMPLIANCE REQUIREMENTS ..................................................................................16

VI. WORK TAKE-OVER ......................................................................................................29

VII. REPORTING REQUIREMENTS ....................................................................................31

VIII. STIPULATED PENALTIES ............……………………………………………35

IX. FORCE MAJEURE ..........................................................................................................38

X. DISPUTE RESOLUTION ................................................................................................41

XI. INFORMATION COLLECTION AND RETENTION ....................................................44

XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................47

XIII. COSTS…………………………………………………………………………..50

XIV. NOTICES......................................................................................................................52

XV. EFFECTIVE DATE ........................................................................................................56

XVI. RETENTION OF JURISDICTION ................................................................................56

XVII. MODIFICATION ..........................................................................................................56

XVIII. TERMINATION ..........................................................................................................57

XIX. PUBLIC PARTICIPATION ..........................................................................................60

XX. SIGNATORIES/SERVICE ............................................................................................61

XXI. INTEGRATION ............................................................................................................62

XXII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION ................................62

XXIII. FINAL JUDGMENT ..................................................................................................62

XXIV. APPENDICES ............................................................................................................63

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

## CONSENT DECREE

**WHEREAS**, Plaintiffs, the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and the Louisiana Department of Environmental Quality ("LDEQ"), an agency of the State of Louisiana to which the Louisiana Legislature has delegated the power and duty to enforce the Louisiana Environmental Quality Act ("EQA"), La. R.S. 30:2001 *et seq*., and Louisiana Environmental Quality Regulations, including the authority to bring actions in courts of competent jurisdiction for violations of the EQA and Louisiana's Hazardous Waste Regulations (Louisiana Administrative Code ("LAC"), 33:V. Subpart 1), (together the "Plaintiffs"), have filed a Complaint alleging that Defendant, PCS Nitrogen Fertilizer, L.P. ("PCS Nitrogen"), at its former phosphoric acid fertilizer facility ("Facility") located in Geismar, Louisiana, has violated the Resource Conservation and Recovery Act ("RCRA"), 42 United States Code ("U.S.C.") §§ 6901 *et seq*., La. R.S. 30:2171 *et seq*., and the applicable regulations in 40 C.F.R. Parts 260-270, and LAC 33:V. Subpart 1;

**WHEREAS**, the Complaint includes allegations, disputed by PCS Nitrogen, that PCS Nitrogen failed to characterize and illegally treated, stored, and disposed of:  hazardous waste from Innophos, Inc.; wastes from the chlorosulfonic acid unit at the sulfuric acid plant; wastes generated during cleaning of phosphoric acid plant equipment; wastes generated from spills, leaks, and railcar cleaning; wastewaters generated from the scrubbers used to control air pollution from the phosphoric acid plants and other chemical and waste management processes at its Facility without a RCRA permit or interim status.  The Complaint also alleges, and PCS Nitrogen disputes, that PCS Nitrogen illegally placed hazardous wastes in a Phosphogypsum Stack System for managing phosphoric acid wastes exempt from hazardous waste regulation pursuant to the Bevill Exclusion, 40 C.F.R. § 261.4(b)(7), thus violating Sections 3004 and 3005

3

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

of RCRA, 42 U.S.C. §§ 6924-25, and the applicable regulations in 40 C.F.R. Parts 260-270, and

La. R.S. 30:2171 *et. seq.*, and the applicable regulations in LAC 33:V. Subpart 1, and that those

hazardous wastes remain in the Phosphogypsum Stack System;

WHEREAS, pursuant to a Consent Decree entered on October 3, 2017 (Civil Action No.

17-26-SDD-RLB), Innophos, Inc., ceased sending wastes that the Complaint alleges to be

hazardous to the PCS Nitrogen Facility for disposal at the Facility as alleged in the Complaint,

and resolved claims of the United States and the State of Louisiana against Innophos, Inc., in

relation to such activities through such Consent Decree;

WHEREAS, Nutrien Ltd. is the ultimate corporate parent company of PCS Nitrogen;

WHEREAS, PCS Nitrogen denies the applicability of Sections 3004 and 3005 of RCRA,

42 U.S.C. §§ 6924-25, and the applicable regulations in 40 C.F.R. Parts 260-270, and La. R.S.

30:2171 *et. seq.*, and the applicable regulations in LAC 33:V. Subpart 1, to certain practices and

conditions at the PCS Nitrogen Facility that are the subject of the Complaint, denies the

violations alleged in the Complaint and referenced herein, and maintains that it has been and

remains in compliance with RCRA and is not liable for civil penalties or injunctive relief.  By

agreeing to entry of this Consent Decree, PCS Nitrogen makes no admission of law or fact with

respect to the allegations in the Complaint, and continues to deny any non-compliance or

violation of any law or regulation identified therein or in this Consent Decree.  For the purpose

of avoiding litigation among the Parties, however, PCS Nitrogen agrees to the requirements of

this Consent Decree;

WHEREAS, PCS Nitrogen ceased phosphoric acid production at the Facility on or about

December 11, 2018, began decommissioning and dismantling the phosphoric acid manufacturing

plant pursuant to LDEQ approval of a minor modification of Solid Waste Permit No. P-0201R2

4

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

on March 19, 2020, and initiated closure of the Phosphogypsum Stack System, including certain

Phosphogypsum Stack System Liner repairs and water treatment system installation; work

completed to date has been done pursuant to the approved Solid Waste Closure Plans under Solid

Waste Permit Nos. P-0201, P-0201R1 and P-0201R2;

      **WHEREAS**, the objective of the Parties in this Consent Decree is to resolve the civil

claims alleged in the Complaint by: (1) establishing certain injunctive relief and environmental

controls, remediation, and Financial Assurance as set forth herein, and (2) by assessing an

appropriate penalty;

      **WHEREAS**, PCS Nitrogen and LDEQ have separately negotiated a settlement to resolve

alleged violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, La. R.S. 30:2071 *et seq.*,

and the applicable regulations in 40 C.F.R. Parts 122-125, and LAC 33:IX. Subparts 1-2, and

LDEQ has issued a Consolidated Compliance Order and Notice of Potential Penalty respecting

such allegations (Enforcement Tracking No. WE-CN-22-00192);

      **WHEREAS,** PCS Nitrogen has conducted itself in good faith in its discussions with the

Plaintiffs concerning the violations alleged in the Complaint and has already implemented

certain corrective measures at its Facility obviating the need for certain injunctive relief;

      **WHEREAS**, the Parties agree that the United States' filing of the Complaint and entry

into this Consent Decree constitutes diligent prosecution by the United States and LDEQ, under

Section 7002(b)(1)(B) of RCRA, 42 U.S.C. § 6972(b)(1)(B), of all matters alleged in the

Complaint and addressed by this Consent Decree through the date of lodging of this Consent

Decree; and

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

**WHEREAS**, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), below, and with the consent of the Parties,

**IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

## I.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action and over the Parties, pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and 28 U.S.C. §§ 1331, 1332, 1345, 1355 and 1367.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), and Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), because PCS Nitrogen's Facility is located in this judicial district.  For purposes of this Consent Decree, or any action to enforce this Consent Decree, the Parties consent to the Court's jurisdiction over this Consent Decree and any such action and over PCS Nitrogen, and further consent to venue in this judicial district.

2.      Pursuant to Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2), notice of the commencement of this action has been given to LDEQ.

3.      For purposes of this Consent Decree only, PCS Nitrogen agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 3004 and 3005 of RCRA, 42 U.S.C. §§ 6924 and 6925, and La. R.S. 30:2171 *et seq*.

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

## II.  APPLICABILITY

4.     The obligations of this Consent Decree apply to and are binding upon the United

States, LDEQ, and PCS Nitrogen, and any successors, assigns, or other entities or persons

otherwise bound by law.  Rights granted to EPA under this Consent Decree may be exercised by

LDEQ upon the written agreement of EPA and LDEQ, with written notice to PCS Nitrogen.

Nothing in this Consent Decree shall apply to administrative or enforcement proceedings other

than this action or an action to enforce this Consent Decree.  Nor does anything in this Consent

Decree relieve PCS Nitrogen of its obligation to comply with any federal and state laws

applicable to activities that are not within the definition of Work in this Consent Decree.

5.     At least thirty (30) Days prior to any transfer of ownership or operation of all or a

portion of the Facility, PCS Nitrogen shall provide notice of such transfer to EPA and LDEQ.

No transfer of ownership or operation of all or a portion of the Facility, whether in compliance

with the procedures of this Paragraph or otherwise, shall relieve PCS Nitrogen of its obligation to

ensure that the terms of this Consent Decree are implemented, unless:  (1) the transferee agrees

in writing to undertake the obligations required by this Consent Decree and to be substituted for

PCS Nitrogen as a Party to the Consent Decree and thus be bound by the terms thereof; and

(2) the United States, after consultation with LDEQ, consents in writing to relieve PCS Nitrogen

of its obligations under this Consent Decree pursuant to Section XVII (Modification) of this

Consent Decree.  At least thirty (30) Days prior to a proposed transfer of PCS Nitrogen's

obligations under this Consent Decree, or such other period agreed to by the Parties in writing,

PCS Nitrogen shall:  (i) provide a copy of this Consent Decree to the proposed transferee, if not

previously provided; and (ii) provide written notice of the prospective transfer, together with a

copy of the proposed written agreement (subject to Paragraphs 68 and 69 of this Consent Decree,

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

and as may otherwise be agreed in writing) transferring obligations to the transferee, to EPA, LDEQ, the United States Attorney for the Middle District of Louisiana, and the United States Department of Justice, in accordance with Section XIV (Notices) of this Consent Decree, together with a request for approval. The United States' decision whether to approve the transferee's substitution for PCS Nitrogen under this Consent Decree, and what conditions may attend approval, will take into account: (i) the status of the project(s) referred to in Paragraph 18(a) of this Consent Decree, (ii) whether the transferee has or will have, prior to the transfer, the financial and technical capability to comply with this Consent Decree, and (iii) other factors that may be deemed relevant, including but not limited to the environmental compliance history of the proposed transferee and the environmental management capabilities of the proposed transferee. Any such transfer shall address and provide Financial Assurance in accordance with Appendix 2 of the Consent Decree, including Section VIII (Business Transactions) of Appendix 2. Any transfer of ownership or operation of all or a portion of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree. The United States' refusal to approve, or approval with conditions for, the substitution of the transferee for PCS Nitrogen under this Consent Decree shall be subject to dispute resolution pursuant to Section X (Dispute Resolution) of this Consent Decree, but any judicial review shall be conducted pursuant to Paragraph 62(a) of this Consent Decree.

6.    PCS Nitrogen shall: (1) provide a copy of this Consent Decree to its President/CEO, Executive Vice Presidents, Assistant General Counsel, corporate Senior Director of Environmental Management, Facility General Manager, Facility Operations Superintendent, and Facility Environmental Manager (or analogous titles as applicable), and shall ensure that employees and contractors whose duties might reasonably include compliance with any

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

provision of this Consent Decree are made aware of this Consent Decree and specifically aware of the requirements of this Consent Decree that fall within such person's duties; (2) place an electronic version of the Consent Decree on its internal environmental website; and (3) post notice of lodging of the Consent Decree and its availability in a location at the Facility where legal notices are posted. PCS Nitrogen shall be responsible for ensuring that all employees and contractors involved in performing any Work pursuant to this Consent Decree perform such Work in compliance with the requirements of this Consent Decree.

7.      In any action to enforce this Consent Decree, PCS Nitrogen shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.   DEFINITIONS

8.      Every term expressly defined by this Section, or in Appendices 1-3 hereto, shall have the meaning given that term in this Consent Decree, regardless of whether it is elsewhere defined in federal or state law. Every other term used in this Consent Decree that is also a term used under RCRA, as amended, 42 U.S.C. §§ 6901 *et seq*., its implementing regulations, or La. R.S. 30:2171 *et seq*., and its implementing regulations, shall have the same meaning in this Consent Decree as such term has under RCRA, La. R.S. 30:2171 *et seq.*, or under federal or Louisiana regulations, including LAC 33:Parts V, VII and IX. In the case of a conflict between federal and state definitions, state definitions, as interpreted by LDEQ, shall control.

a.      3013 Order shall mean the Administrative Order on Consent, Docket No. RCRA-06-2008-0902, entered into by PCS Nitrogen and EPA on November 4, 2008, under RCRA Section 3013(a), 42 U.S.C. § 6934(a), as terminated by EPA in the Closure of Administrative Order on Consent letter dated April 20, 2020;

9

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

b. Bevill-Excluded Wastes shall mean Phosphogypsum and Process Wastewater from phosphoric acid production through mineral processing, which are solid wastes excluded from hazardous waste regulation pursuant to 40 C.F.R. § 261.4(b)(7)(ii)(D) and/or (P);

c. Clearwells shall mean the Active and Inactive Clearwells as shown in Appendix 1 (Facility Compliance Requirements), Attachment B (Figure of Phosphogypsum Stack System), hereto;

d. Complaint shall mean the complaint filed by the United States and LDEQ in this action;

e. Consent Decree shall mean this Consent Decree and all Appendices identified in Section XXIV (Appendices) and attached hereto.  In the event of any conflict between this Consent Decree and any Appendix hereto, this Consent Decree shall control;

f. Corrective Action shall mean all activities required pursuant to RCRA and its state and local counterparts to investigate, remediate, or otherwise address the presence or release of solid or hazardous wastes at or from the Facility, including any release of Phosphogypsum Stack System Wastewater;

g. Day shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State of Louisiana holiday, the period shall run until the close of business of the next business day;

h. Defendant or PCS Nitrogen shall mean PCS Nitrogen Fertilizer, L.P.;

i. EPA shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

j. Effective Date is defined in Section XV (Effective Date);

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

k.    Facility shall mean PCS Nitrogen's Geismar, Louisiana, former phosphoric acid manufacturing plant, Phosphogypsum Stack System, and all other contiguous or adjacent property owned and/or operated by PCS Nitrogen (except for its nitrogen plant and former sulfuric acid production area) as delineated in Appendix 1 (Facility Compliance Requirements), Attachment A (Site Map);

l.    Financial Assurance shall mean a written demonstration of financial capability or establishment of a Financial Mechanism (*i.e.*, Third-Party Mechanism(s) or Self-Assurance Mechanism(s)), in compliance with the terms of Appendix 2 (Financial Assurance) to implement Phosphogypsum Stack System Closure and Long-Term Care, in an amount at least equal to the Cost Estimate for said activities, and to provide for Third-Party liability as required in Appendix 2;

m.    First Saleable Product shall mean:

(1)    Merchant Grade Acid ("MGA"), which is typically 52% to 54% (by weight) of $P_2O_5$ but may vary slightly across the phosphoric acid industry, manufactured from the direct reaction of phosphate rock and sulfuric acid, and containing less than one percent (1%) solids content, whether or not it is actually placed into commerce; or, if applicable,

(2)    any intermediate phosphoric acid product with a $P_2O_5$ content less than or equal to MGA that is diverted from further processing into MGA in order to be placed into commerce, further concentrated above 54% $P_2O_5$ (by weight), or used as a feedstock in manufacturing monoammonium phosphate and/or diammonium phosphate, superphosphoric acid, purified acid, or other chemical manufacturing products, as alleged

in the Complaint, but denied by PCS Nitrogen (as of the date of lodging of this Consent Decree, all phosphoric acid production operations at the Facility have ceased);

        n.        Interest shall mean the interest rate specified in 28 U.S.C. § 1961;

        o.        LDEQ shall mean Louisiana Department of Environmental Quality and any of its successor departments or agencies;

        p.        Paragraph shall mean a portion of this Consent Decree identified by an Arabic numeral;

        q.        Parties shall mean the United States, LDEQ, and PCS Nitrogen;

        r.        Permanent Phosphogypsum Stack System Closure Plan ("Permanent Closure Plan") means the plan for the Phosphogypsum Stack System Closure submitted at or prior to closure and prepared in accordance with the requirements of Attachment D (Closure of Phosphogypsum Stack System or Components) of Appendix 1 (Facility Compliance Requirements) of this Consent Decree;

        s.        Phosphogypsum shall mean calcium sulfate and byproducts produced by the reaction of sulfuric acid with phosphate rock to produce phosphoric acid.  Phosphogypsum is a solid waste within the definition of Section 1004(27) of RCRA, 42 U.S.C. § 6903(27);

        t.        Phosphogypsum Stack shall mean any defined geographic area associated with a phosphoric acid production plant in which Phosphogypsum is disposed of or stored, other than within a fully enclosed building, container or tank;

        u.        Phosphogypsum Stack System shall mean the defined geographic area identified in Appendix 1 (Facility Compliance Requirements), Attachment B (Figure of Phosphogypsum Stack System), associated with a phosphoric acid production plant in which Phosphogypsum and Process Wastewater are or have been disposed of or stored, together with

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

all pumps, piping, ditches, drainage conveyances, water control structures, collection pools,

Cooling Ponds, Surge Ponds (including former Surge Ponds (*i.e.*, Clearwells) that have been or

may be converted to lime treatment sludge ponds), Auxiliary Holding Ponds, and any other

collection or conveyance system associated with the Transport of Phosphogypsum from the

former phosphoric acid plant to the Phosphogypsum Stack, and the management of Process

Wastewater and Phosphogypsum at the Phosphogypsum Stack.  This definition includes Toe

Drain systems and ditches and other Leachate Collection Systems, but does not include

containers, tanks, or conveyances within the confines of the phosphoric acid or fertilizer

production plant(s) or impoundments used in emergency circumstances caused by rainfall events

of high volume or duration for the temporary storage of Process Wastewater;

v.      Phosphogypsum Stack System Closure ("PSS Closure") shall mean the

cessation of operation of the Phosphogypsum Stack System or Component and the acts of

securing and closing such a Phosphogypsum Stack System or Component, in accordance with

the Permanent Closure Plan, so that the closed Phosphogypsum Stack System or Component

meets performance standards designed to protect human health and the environment.  PSS

Closure includes Stack Closure and Long-Term Care (as defined in Appendix 1 (Facility

Compliance Requirements), Attachment F (Definitions)) and Water Management activities

associated with Stack Closure and Long-Term Care;

w.      Phosphogypsum Stack System Wastewater shall mean wastewater in the

Phosphogypsum Stack System containing Bevill-Excluded Wastes commingled with hazardous

wastes, as alleged in the Complaint but denied by PCS Nitrogen, including mixtures and

entrained wastes and solids;

13

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

x.    Process Wastewater shall mean process wastewater from phosphoric acid production.  The following waste streams constitute Process Wastewater from phosphoric acid production:  water from phosphoric acid production operations through concentration to the First Saleable Product; process wastewater that is used to Transport Phosphogypsum to the Phosphogypsum Stack; Phosphogypsum Stack runoff (excluding non-contact runoff); process wastewater generated from any uranium recovery in phosphoric acid production; process wastewater generated from non-ammoniated animal feed production (including defluorination, but excluding ammoniated animal feed production) operations that qualify as mineral processing operations based on the definition of mineral processing that EPA finalized on September 1, 1989; and process wastewater generated from a superphosphate production process that involves the direct reaction of phosphate rock with dilute phosphoric acid with a concentration less than Merchant Grade Acid (<u>see</u> 55 Fed. Reg. 2328 (January 23, 1990));

y.    RCRA Requirements shall mean the requirements of RCRA Subtitle C, the applicable regulations in 40 C.F.R. Parts 260-270, and La. R.S. 30:2171 *et seq.* and the applicable regulations in LAC 33:V. Subpart 1;

z.    Section shall mean a portion of this Consent Decree identified by a roman numeral;

aa.    United States shall mean the United States of America, acting on behalf of EPA;

bb.    Water Management shall mean the water and wastewater management activities required by Appendix 1 (Facility Compliance Requirements);

14

cc.     Water Management Plan shall mean the Site-specific Water Management Plan addressed in Appendix 1 (Facility Compliance Requirements), Attachment C (Operational Requirements During Phosphogypsum Stack System Closure), Section III, Paragraph (10);

dd.     Water Treatment Plant shall mean the plant constructed at the Facility, including ancillary equipment and settling impoundments (which may be outside the footprint of the Phosphogypsum Stack System), to treat wastewater from the Phosphogypsum Stack System;

ee.     Work shall mean any activity, including all activities in the Appendices, that PCS Nitrogen must perform to comply with the requirements of this Consent Decree.

## IV.  CIVIL PENALTY

9.     Within thirty (30) Days after the Effective Date of this Consent Decree, PCS Nitrogen shall pay the sum of $1,510,023 as a civil penalty, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging, in accordance with Paragraphs 10 and 11.

10.     PCS Nitrogen shall pay $755,011.50, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice, in accordance with written instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the Middle District of Louisiana, 777 Florida Street, Suite 208, Baton Rouge, LA 70801, to PCS Nitrogen within ten (10) Days of lodging of the Consent Decree.  At the time of payment, PCS Nitrogen shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, to the United States in accordance with Section XIV (Notices) of this Consent Decree; by email to acctsreceivable.CINWD@epa.gov; and by mail to:

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, OH 45268

The transmittal letter shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in <u>United States et al. v. PCS Nitrogen Fertilizer, L.P</u>, and shall reference the civil action number and DOJ case number 90-7-1-08388/22.

11.     PCS Nitrogen shall pay the sum of $755,011.50 as a civil penalty, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, to LDEQ by check, or EFT if requested, in accordance with instructions to be provided to PCS Nitrogen by LDEQ.  If payment is made by check, the check shall be made payable to the Louisiana Department of Environmental Quality, referencing this civil action, and mailed to:  Fiscal Administrator, LDEQ, Office of Management and Finance, P.O. Box 4303, Baton Rouge, LA 70821-4303.

12.     PCS Nitrogen shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal or state or local income tax.

## V.  COMPLIANCE REQUIREMENTS

13.     <u>Completed Activities</u>.  PCS Nitrogen has already completed the activities identified in Appendix 4 (Completed Activities) at the Facility.

14.     <u>Hazardous Waste Determination</u>.  PCS Nitrogen shall make a RCRA hazardous waste determination, pursuant to LAC 33:V.1005 and 40 C.F.R. § 262.11, on all solid wastes generated at the Facility, including any solid wastes generated during cleaning of equipment or Phosphogypsum Stack System Closure.  If the hazardous waste determination shows that the wastes are hazardous, PCS Nitrogen shall manage such wastes in compliance with the RCRA

16

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

Requirements and/or pursuant to Appendix 1 (Facility Compliance Requirements), Attachment D (Closure of Phosphogypsum Stack Systems or Components) of this Consent Decree, as applicable.

15.     PCS Nitrogen may manage waste in a Phosphogypsum Stack or impoundment only pursuant to an LDEQ permit and/or Appendix 1 (Facility Compliance Requirements), Attachment D (Closure of Phosphogypsum Stack Systems or Components) of this Consent Decree, as applicable.

16.     <u>Site Assessment and Corrective Action</u>.

a.     PCS Nitrogen has completed certain site assessment activities pursuant to the 3013 Order for the Facility, including submitting a final sampling and analysis report to EPA and conveyed to LDEQ by EPA and PCS Nitrogen.  LDEQ has determined that additional investigative work is required at the Facility, which will be addressed pursuant to applicable state law.  LDEQ and PCS Nitrogen shall continue to evaluate and, if warranted, implement appropriate Corrective Action to address the contamination identified through the 3013 Order and any additional investigative work required at the Facility, which will be governed by an administrative agreement, permit, or order issued by LDEQ under its authorized state program, and subject to EPA's residual authorities under RCRA or any other applicable law.  LDEQ's authority to issue an administrative agreement, permit, or order for Corrective Action is separate from this Consent Decree, and thus is not subject to the dispute resolution (Section X) provisions of this Consent Decree, but is instead subject to state law, including provisions for dispute resolution, and any dispute resolution provisions set forth in an administrative agreement, permit, or order for Corrective Action.

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

b.      EPA reserves the right to require and direct Corrective Action at the Facility pursuant to RCRA or any other applicable law, and any decision by EPA to invoke its reserved authority shall not be subject to the dispute resolution (Section X) provisions of this Consent Decree.

17.    Groundwater Monitoring.

a.      PCS Nitrogen and LDEQ have revised the Groundwater Monitoring Plan ("GWMP") associated with PCS Nitrogen's LDEQ-issued Solid Waste Permit P-0201R2[1] to include, *inter alia*, the additional investigative work referenced in Paragraph 16(a) above. LDEQ's solid waste permitting process is not subject to the dispute resolution (Section X) provisions of this Consent Decree, but is instead subject to state law and state administrative process for appeals.

b.      EPA reserves the right to require and direct groundwater monitoring at the Facility pursuant to RCRA or any other applicable law, and any decision by EPA to invoke its reserved authorities shall not be subject to the dispute resolution (Section X) provisions of this Consent Decree.

18.    Phosphogypsum Stack System at the Facility.  Subject to the Plaintiffs' reservations of rights set forth in Paragraph 74, compliance with the requirements of this Section shall be deemed to satisfy applicable RCRA Requirements, and corresponding requirements of the Louisiana Solid Waste Management and Resource Recovery Law (La. R.S. 30:2151 *et seq.*) and the regulations promulgated thereunder (LAC 33:VII), applicable to Phosphogypsum Stack System Closure/Post-Closure.  Nothing in this Consent Decree restricts the enforcement of the aforementioned regulations in the event that PCS Nitrogen does not comply with this Section.

---

[1] PCS Nitrogen's LDEQ-issued Solid Waste Permit P-0201R2 includes a "Sampling and Analysis Plan" and a "Groundwater Assessment Work Plan," collectively, the GWMP.

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

a.      PCS Nitrogen shall comply with all requirements set forth in an LDEQ-approved GWMP, as well as Appendix 1 (Facility Compliance Requirements), Attachment C (Operational Requirements During Phosphogypsum Stack System Closure), including the Toe Drain tie-in project and the Contingency Plan, Attachment D (Closure of Phosphogypsum Stack Systems or Components), Attachment E (Critical Conditions and Temporary Measures), and Attachment G (Phosphogypsum Stack System Permanent Closure Plan Checklist), and the Active Clearwell projects in Appendix 3 (RCRA Project Narrative and Compliance Schedule) at the Facility.

b.      PCS Nitrogen shall not construct and/or operate a lateral or vertical expansion of the existing Phosphogypsum Stack System or construct a new Phosphogypsum Stack System at the Facility.  Neither the placement of materials associated with the decommissioning of the phosphoric acid plant in Phosphogypsum Stack 7 in accordance with Standard Permit P-0201R2-M4 issued by LDEQ, as modified or renewed by LDEQ, nor placement of other materials in a Phosphogypsum Stack pursuant to Appendix 1 (Facility Compliance Requirements), Attachment D (Closure of Phosphogypsum Stack Systems or Components), or an LDEQ permit constitutes a lateral or vertical expansion of the existing Phosphogypsum Stack System under this Paragraph.

c.      PCS Nitrogen has submitted a Permanent Closure Plan Checklist (Appendix 1 (Facility Compliance Requirements), Attachment G (Phosphogypsum Stack System Permanent Closure Plan Checklist)) with a Permanent Closure Plan (Appendix 2, Attachment B), which LDEQ approved on July 7, 2022.  PCS Nitrogen shall, in accordance with the deadlines specified in Appendix 1, Attachment D (Closure of Phosphogypsum Stack Systems or Components) of this Consent Decree:  (1) implement the Permanent Closure Plan; and

19

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

(2) request and implement any forthcoming or future modification to the Permanent Closure Plan in accordance with Appendix 1, Attachment D, and the Permanent Closure Plan (Appendix 2, Attachment B).

        d.      PCS Nitrogen shall treat, store, manage, Transport or dispose of wastes of the Phosphogypsum Stack System during PSS Closure in accordance with this Consent Decree (<u>see</u> Appendix 1 (Facility Compliance Requirements), Attachment D (Closure of Phosphogypsum Stack System or Components)) and the Permanent Closure Plan attached hereto as Appendix 2, Attachment B.

        e.      PCS Nitrogen shall not construct a new Phosphogypsum Stack System unit or Component, or repurpose an existing Component within the footprint of the Phosphogypsum Stack System set out in Appendix 1 (Facility Compliance Requirements), Attachment B (Figure of Phosphogypsum Stack System), except as provided for in Appendix 3 (RCRA Project Narrative and Compliance Schedule) or Attachments C (Operational Requirements During Phosphogypsum Stack System Closure) or D (Closure of Phosphogypsum Stack Systems or Components) of Appendix 1 of the Consent Decree.  The construction of a new unit or Component or the repurposing of a Component shall not alter the deadlines or conditions associated with the initiation and completion of PSS Closure of the Phosphogypsum Stack System or Components unless provided in accordance with Appendix 3 or Appendix 1, Attachment D of the Consent Decree.

      19.      <u>Financial Assurance</u>.

        a.      PCS Nitrogen shall secure and maintain Financial Assurance for the benefit of EPA and LDEQ pursuant to the requirements of Appendix 2 (Financial Assurance) of this Consent Decree in order to provide coverage for:  (1) Third-Party liability (Section IV,

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

Appendix 2); and (2) Phosphogypsum Stack System Closure as required under Appendix 1

(Facility Compliance Requirements), Attachment D (Closure of Phosphogypsum Stack Systems

and Components).  PCS Nitrogen's inability to secure and/or maintain adequate Financial

Assurance for the Facility shall in no way excuse performance of the Work or any other

requirement of this Consent Decree.

b.      The Financial Assurance established by PCS Nitrogen under Paragraph

19(a) that meets the requirements of Appendix 2 shall be deemed to fully satisfy PCS Nitrogen's

obligation to comply with LAC 33:V, Chapter 37, and LAC 33:VII.1303, 1307 and 1399,

including the reporting requirements thereof, with respect to financial assurance for Closure and

Post-Closure Care for the Phosphogypsum Stack System at the Facility and for Third-Party

liability coverage.

c.      In the event LDEQ determines, pursuant to Paragraph 16, that Corrective

Action is required, then financial assurance for the Corrective Action shall be addressed through

an administrative agreement, order, or the modification of the Facility's solid waste permit in the

manner provided by applicable state law and regulations.  If EPA requires Corrective Action

pursuant to its reserved authorities as set forth in Paragraph 16(b) of this Consent Decree, then

financial assurance shall be addressed through those authorities.

d.      In addition to the Financial Assurance information included in the reports

required pursuant to Section VII (Reporting Requirements) of this Consent Decree, PCS

Nitrogen shall provide to EPA and LDEQ, upon request, any information or reports that

Plaintiffs are authorized to request pursuant to Section 3007 of RCRA, 42 U.S.C. § 6927; 40

C.F.R. Part 264, Subpart H; La. R.S. 30:2001 *et seq.*; LAC 33:VII, Chapter 13; and

LAC:33.V.3701 *et seq.*; or any other applicable statutory or regulatory information-gathering

21

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

authorities, regarding the financial status of PCS Nitrogen, the financial mechanism(s) provided by PCS Nitrogen to meet its obligation for Financial Assurance, and the financial institution providing the financial mechanism(s) to secure PCS Nitrogen's obligations, pursuant to Appendix 2 (Financial Assurance).

20.    <u>Review and/or Approval of Submissions</u>.  Pursuant to Paragraph 4 of this Consent Decree, the authorities set forth in Paragraphs 20-24 may be delegated by EPA to LDEQ with written notice to PCS Nitrogen.  Where any provision of this Consent Decree requires PCS Nitrogen to submit a plan, notification, report, procedure, protocol or other deliverable (hereinafter collectively referred to as a "submission") to EPA, the submission shall be subject to either "EPA approval" or "EPA review," as set forth in Paragraphs 21-24, below.  If there is any question as to whether a particular submission requires EPA approval or review, it shall be submitted for approval subject to EPA's discretion to treat it as a submission for review.  EPA approval as used herein means an approval by EPA in consultation with LDEQ, or by LDEQ if EPA delegates such authority to LDEQ pursuant to Paragraph 4 of the Consent Decree with notice to PCS Nitrogen.  All submissions to EPA pursuant to this Consent Decree shall be complete and technically adequate and prepared in accordance with the requirements of this Consent Decree, including all applicable requirements of Appendix 1 (Facility Compliance Requirements).  Unless waived by EPA for a specific submission:  (a) all technical work plans and reports submitted for EPA approval or review shall include a certification by a Third-Party Engineer, geologist, or other qualified professional for the subject matter, and (b) all other submissions shall include a certification of a corporate officer.

21.    <u>Submissions Subject to EPA Approval</u>.  After review of any work plan, report, or other item set forth below that is required to be submitted or revised and resubmitted to EPA for

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

approval pursuant to this Consent Decree, EPA, after consultation with LDEQ, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.  In the event of disapproval of any portion of the submission, EPA shall include a statement of the reasons for such disapproval in its response.  The following submissions required under Appendix 1 (Facility Compliance Requirements) are subject to EPA approval:

     i.     Site-specific Sludge Management Plan (Attachment D (Closure of Phosphogypsum Stack Systems or Components), Section II, Paragraph (10));

     ii.     Site-specific Water Management Plan (Attachment C (Operational Requirements During Phosphogypsum Stack System Closure), Section III, Paragraph (10));

     iii.     Water Balance Analysis Alternate Date (Attachment C, Section III, Paragraph (11)(a));

     iv.     Alternatives Plan and Implementation Schedule for Water Management (Attachment C, Section III, Paragraph (11)(d));

     v.     Permanent Closure Plan Checklist and Permanent Phosphogypsum Stack System Closure Plan (Attachment D, Section II, Paragraph (3));

     vi.     Alternate Final Cover (Attachment D, Section II, Paragraph (13)(c)(iii)(B));

     vii.     Certification of Stack Closure (Attachment D, Section III, Paragraph (5));

     viii.     Use of Closed Phosphogypsum Stack Systems (Attachment D, Section III, Paragraph (6));

     ix.     Reduced Long-Term Care Schedule (Attachment D, Section IV, Paragraph (4));

     xi.     Certification of Long-Term Care Completion (Attachment D, Section IV, Paragraph (7));

     xii.     Contingency Plan (Attachment C, Section V);

     xiii.     Lined Component Repurpose Request (Attachment C, Section VI, Paragraph (2));

xiv.    Certification for Partial Closure of Component (Attachment D, Section III, Paragraph (3)(b));

xv.    Reduced Long-Term Care Period of Approved Component(s) for Long-Term Care (Attachment D, Section IV, Paragraph (5));

xvi.    Request for Revised Schedule for Submittal of Interim Status Reports for Perimeter Dikes (Attachment E (Critical Conditions and Temporary Measures), Section I, Paragraph (2));

xvii.    Request for Revised Schedule for Submittal of Interim Status Reports for Phosphogypsum Stack Systems (Attachment E, Section II, Paragraph (2));

xviii.    Modifications of Perimeter Dike (Attachment C, Section II, Paragraph (1)); and

xvii.    AHP or 1st Stage LSSI Remedial Plan (Attachment E, Section IV, Paragraph (6)).

22.    Approval or Conditional Approval.  If the submission is approved pursuant to Paragraph 21(a), PCS Nitrogen shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 21(b) or 21(c), PCS Nitrogen shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to PCS Nitrogen's right to dispute only the specified conditions, the disapproval, or the determination of the technical severability of portions of the submission under Section X (Dispute Resolution) of this Consent Decree.

23.    Disapproval in Whole or Part.

a.    If the submission is disapproved in whole or in part pursuant to Paragraph 21(c) or 21(d), PCS Nitrogen shall, within sixty (60) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

portion thereof, for approval, in accordance with the preceding Paragraphs.  If the submission

has been previously disapproved, EPA may impose an earlier due-date for resubmission, but not

less than fourteen (14) Days.  If the resubmission is approved in whole or in part, PCS Nitrogen

shall proceed in accordance with the provisions of the preceding Paragraph governing approval

of submissions.

        b.      If a resubmitted plan, report, or other item, or portion thereof, is

disapproved in whole or in part, EPA, after consultation with LDEQ, may again require PCS

Nitrogen to correct any deficiencies in accordance with the preceding Paragraphs, may itself

correct any deficiencies, or may finally disapprove the submission, subject to PCS Nitrogen's

right to invoke dispute resolution under Section X (Dispute Resolution) and the right of EPA and

LDEQ to seek stipulated penalties as provided in the following Sub-Paragraph.  If the

resubmission is approved or corrected in whole or in part, PCS Nitrogen shall proceed in

accordance with Paragraph 22.

        c.      Any stipulated penalties applicable to the original submission, as provided

in Section VIII (Stipulated Penalties) of this Consent Decree, shall accrue during the sixty (60)

Day period or other agreed upon period, but shall not be payable unless the resubmission is

untimely or is disapproved in whole or in part; provided that, if the original submission was so

deficient as to constitute a material breach of PCS Nitrogen's obligations under this Consent

Decree, the stipulated penalties applicable to the original submission shall be due and payable

notwithstanding any subsequent resubmission.

        24.    <u>Submissions Subject to EPA Review</u>.  For submissions set forth below that are

subject to EPA review, EPA, in consultation with LDEQ, within 60 (sixty) Days of receiving the

submission may:  (a) provide written comments on the submission, in whole or in part,

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

(b) decline to comment, or (c) notify PCS Nitrogen that comments will be provided at a later date not to exceed one hundred and twenty (120) Days from the date of submission.  If EPA provides written comments, PCS Nitrogen within forty-five (45) Days of receiving such comments shall modify the submission consistent with EPA's written comments unless it has invoked dispute resolution pursuant to Section X (Dispute Resolution) of the Consent Decree.  A decision by EPA to decline to comment does not constitute approval of the submission or waive any obligation by PCS Nitrogen to comply with the requirements of this Consent Decree or any applicable federal, Louisiana, or local laws governing such submissions.  The following submissions required by Appendix 1 (Facility Compliance Requirements) and this Consent Decree are subject to EPA review:

     i.     Report on Conditions for Temporary Use of the Minimum Required Freeboard (Attachment C (Operational Requirements During Phosphogypsum Stack System Closure), Section III, Paragraph (9)(d));

     ii.     Construction Quality Assurance Report (Attachment D (Closure of Phosphogypsum Stack Systems or Components), Section II, Paragraph (15));

     iii.     Report on Final Survey and Record Drawings after Stack Closure is complete (Attachment D, Section III, Paragraph (2));

     iv.     Replacement of Monitoring Devices within Sixty (60) Days of Notification to EPA (Attachment D, Section IV, Paragraph (6));

     v.     Submission of Report of Critical Condition and Proposal for Correction (Perimeter Dike) (Attachment E (Critical Conditions and Temporary Measures), Section I, Paragraph (1));

     vi.     Submission of Report of Critical Condition and Proposal for Correction (Phosphogypsum Stack System) (Attachment E, Section II, Paragraph (1));

     vii.     Interim Report on Critical Condition (Perimeter Dike) (Attachment E, Section I, Paragraph (2));

     viii.     Critical Condition Completion Report (Perimeter Dike) (Attachment E, Section I, Paragraph (3));

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

   ix. Interim Report on Critical Condition (Phosphogypsum Stack System) (Attachment E, Section II, Paragraph (2)); and

   x. Critical Condition Completion Report (Phosphogypsum Stack System) (Attachment E, Sections II, Paragraph (3)).

  25. <u>Correction of Non-Compliance</u>.

   a. If PCS Nitrogen determines, with or without notice from EPA and/or LDEQ, that it is violating, or will violate, any requirement of Section V (Compliance Requirements) of this Consent Decree, other than those set forth in Paragraph 19 (Financial Assurance) (obligations governed by Appendix 2 (Financial Assurance)), PCS Nitrogen shall submit with its report of the violation(s), pursuant to Section VII (Reporting Requirements) of this Consent Decree, and shall subsequently implement, a correction plan to rectify the violation ("Correction Plan"), if it has not already corrected the violation by the time of the report.  The Correction Plan shall include a schedule for correcting the violation.

   b. In the event of a violation subject to Paragraph 25(a), PCS Nitrogen shall be considered to be in compliance with this Consent Decree for purposes of assessing PCS Nitrogen's compliance with this Consent Decree under Paragraphs 27, 71, 72 and 73 of this Consent Decree, provided that PCS Nitrogen meets the following (collectively known as "Continuing Compliance Criteria"):

    (1) Timely implements and completes its Correction Plan; or

    (2) Refers an allegation of non-compliance with Section V (Compliance Requirements) or with a Correction Plan to dispute resolution pursuant to Section X (Dispute Resolution) and either:

     (a) Prevails in the dispute resolution, or

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

        (b)      Satisfactorily complies with an EPA or judicial directive to correct any instances of non-compliance.

Nothing in this Paragraph shall be construed as EPA approval of PCS Nitrogen's correction efforts pursuant to this Paragraph, as a waiver of stipulated penalties for the violation pursuant to Section VIII (Stipulated Penalties), or as limiting the rights reserved by Plaintiffs under Section VI (Work Take-over) or Paragraph 74 of this Consent Decree. EPA reserves the right to require, upon written request, that a Correction Plan be submitted to EPA for approval in accordance with Paragraphs 21-24, above. PCS Nitrogen's compliance with this Paragraph is without prejudice to its rights under Section IX (Force Majeure) and Section X (Dispute Resolution) of this Consent Decree.

        26.    <u>Permits</u>. Where any compliance obligation under this Section requires PCS Nitrogen to obtain a federal, Louisiana, or local permit, or other form of approval, PCS Nitrogen shall submit timely and complete applications and take such actions as are necessary to obtain all such permits or approvals. A request for supplementation by the permitting agency does not constitute a notice or finding that an application was incomplete for the purpose of this Paragraph unless the permitting agency determines that the original application was so deficient as to constitute a material breach of PCS Nitrogen's obligations under this Consent Decree. PCS Nitrogen may seek relief under the provisions of Section IX (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if PCS Nitrogen has submitted timely and complete applications and has taken such actions as are necessary to timely obtain all such permits or approvals.

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

27.     Provided that PCS Nitrogen remains in compliance with Section V (Compliance Requirements) or the Continuing Compliance Criteria set forth in Paragraph 25 at the Facility, PCS Nitrogen shall not be required to operate the Facility as a treatment, storage, or disposal facility pursuant to Section 3005 of RCRA, 42 U.S.C. § 6925, and its implementing federal and/or Louisiana regulations, (<u>see</u>, <u>e.g.</u>, La. R.S. 30:2192), with respect to the treatment, Storage, Transport, management, and disposal of Bevill-Excluded Wastes that have been commingled with hazardous wastes or as otherwise managed in violation of law as alleged in the Complaint, but denied by PCS Nitrogen:

        a.      Prior to the lodging of this Consent Decree, and,

        b.      As applicable:

              (1)     prior to completing the projects referred to in Paragraph 18(a) and/or

              (2)     during timely implementation of a Correction Plan as set forth in Paragraph 25.

## VI.   WORK TAKE-OVER

28.     In the event EPA determines that PCS Nitrogen:  (a) has ceased implementation of any portion of the Work; or (b) is seriously or repeatedly deficient or late in its performance of the Work; or (c) is implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA, after consultation with LDEQ and with the joint approval of the EPA Region 6 Regional Administrator and the Assistant Administrator for the EPA Office of Enforcement and Compliance Assurance, may issue a written notice ("Work Take-over Notice") to PCS Nitrogen.  Any Work Take-over Notice issued by EPA shall specify the grounds upon which such notice was issued and shall provide PCS Nitrogen a period of thirty

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

(30) Days, or such additional time that EPA determines may reasonably be needed, within which to remedy the circumstances giving rise to EPA's issuance of such notice.

29.     If, after expiration of the period specified in Paragraph 28 of this Section, the Work Take-over Notice has not been withdrawn by EPA, and PCS Nitrogen has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the Work Take-over Notice, EPA at any time thereafter may undertake a take-over of the Work ("Work Take-over") by:  (a) assuming and/or directing the performance of; (b) seeking the appointment of a receiver to direct the performance of; or (c) accessing Financial Assurance (with the concurrence of LDEQ) to finance the performance of all or any portions of the Work that EPA deems necessary to correct the violations or conditions that triggered the Work Take-over Notice pursuant to Paragraph 28.  EPA shall notify PCS Nitrogen in writing (which writing may be electronic) if EPA determines that implementation of a Work Take-over is warranted under this Section of the Consent Decree.  In the event that EPA seeks to appoint a receiver to direct the performance of the Work, PCS Nitrogen shall not oppose such appointment on grounds other than lack of competence or conflict of interest, but shall retain its right to challenge the underlying Work Take-over in dispute resolution, as set forth in the following Paragraph and Section X (Dispute Resolution) of this Consent Decree.  In implementing any Work Take-over, EPA shall make reasonable efforts not to interfere with Facility operations not directly affected by the conditions that triggered the Work Take-over.

30.     In the event that PCS Nitrogen invokes Section X (Dispute Resolution) of the Consent Decree with respect to EPA's Work Take-over and/or its selection of options set forth in Paragraph 29 (which must be disputed together with the underlying Work Take-over and pursuant to Paragraph 62(a) of this Consent Decree), EPA during the pendency of any such

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

dispute may, in its unreviewable discretion, commence and continue a Work Take-over until the

earlier of:  (a) the date that PCS Nitrogen remedies, to EPA's satisfaction, the circumstances

giving rise to issuance of the Work Take-over Notice; or (b) the date that a final decision is

rendered in accordance with Section X (Dispute Resolution) of the Consent Decree requiring

EPA to terminate such Work Take-over.

31.     After commencement and for the duration of any Work Take-over, EPA or any

appointed receiver shall have the immediate benefit of any Financial Assurance provided

pursuant to Paragraph 19 and Appendix 2 (Financial Assurance) of this Consent Decree to

implement the Work.  If EPA or any appointed receiver are unable to access the Financial

Assurance, or the Work addressed by the Work Take-over is not covered by Financial

Assurance, then any unreimbursed costs incurred by EPA in connection with the Work Take-

over shall be considered a financial obligation owed by PCS Nitrogen to the United States and

collectible in an action to enforce this Consent Decree.  Nothing in this Paragraph shall be

construed to relieve PCS Nitrogen of its obligation to provide adequate Financial Assurance

pursuant to Appendix 2.  In the event that it is determined in dispute resolution that the Work

Take-over was not warranted, any unexpended funds in a standby trust that originated from a

letter of credit, surety bond or corporate guarantee shall be used to restore any preexisting trust

fund to the pre-Work Take-over level, if necessary, and any balance of unexpended funds shall

be released and used to reestablish the original Financial Mechanism(s).

## VII.  REPORTING REQUIREMENTS

32.     If PCS Nitrogen determines that it has violated or will violate, any requirement of

this Consent Decree, PCS Nitrogen shall notify EPA and LDEQ of such violation and its likely

duration, in writing (unless otherwise directed by EPA or LDEQ), within twelve (12) Days of the

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

date PCS Nitrogen first becomes aware of the violation, with an explanation of the likely cause

of the violation and of the remedial steps taken, or to be taken, to prevent or minimize such

violation.  If the cause of a violation cannot be fully explained at the time the report is due, PCS

Nitrogen shall so state in the report.  PCS Nitrogen shall investigate the cause of the violation

and shall then submit an amendment to the report, including a full explanation of any identifiable

cause(s) of the violation, within thirty (30) Days of the date PCS Nitrogen becomes aware of the

cause of the violation.  Nothing in this Paragraph or the following Paragraphs 33 and 34 relieves

PCS Nitrogen of its obligation to provide the notice required by Section IX of this Consent

Decree (Force Majeure).

      33.   <u>Periodic Reporting</u>.

      a.   Within forty-five (45) Days after the end of each calendar-quarter after

lodging of this Consent Decree (quarters shall be calculated based on PCS Nitrogen's end-of-

fiscal-year), until the quarter ending after the two (2)-year anniversary of the date of lodging or

the quarter ending after the official date of Stack Closure pursuant to Section III, Paragraph 5 of

Appendix 1 (Facility Compliance Requirements), Attachment D (Closure of Phosphogypsum

Stack Systems or Components), whichever is later, PCS Nitrogen shall submit to EPA and

LDEQ a report for the Facility for the preceding calendar quarter, that shall include:  (i) the

status of any construction or compliance measures referred to in Paragraph 18(a); (ii) completion

of milestones of the projects referred to in Paragraph 18(a); (iii) problems encountered or

anticipated, together with implemented or proposed solutions, with the construction or operation

of the projects referred to in Paragraph 18(a); (iv) status of permit applications for projects

referred to in Paragraph 18(a); (v) status of plans and submittals for PSS Closure and status of

permit application, as applicable, for PSS Closure; (vi) status of PSS Closure and

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

implementation of the Permanent Closure Plan; (vii) operation and maintenance difficulties or problems encountered or anticipated, together with implemented or proposed solutions, during PSS Closure; (viii) status of Financial Assurance; (ix) any acceptance of hazardous wastes from outside the Facility; (x) a description of any violation of the requirements of this Consent Decree reported under Paragraph 32 and an explanation of the likely cause of such violation and of the remedial steps taken, or to be taken, to prevent or minimize such violation; (xi) identification of any confirmed "critical condition," as defined and reported to LDEQ and/or EPA pursuant to Appendix 1 (Facility Compliance Requirements), Attachment E (Critical Conditions and Temporary Measures); and (xii) the log of disposal of Remediation Soils required by Appendix 1, Attachment D (Closure of Phosphogypsum Stack Systems or Components).

   b.  Thereafter, PCS Nitrogen shall submit such reports to EPA and LDEQ on an annual basis until this Consent Decree is terminated.

  34.  Whenever any violation of this Consent Decree, or any other event affecting the Facility or PCS Nitrogen's performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, PCS Nitrogen shall notify EPA and LDEQ per Section XIV (Notices), and EPA Region 6 Emergency Response, orally or by electronic or facsimile transmission as soon as possible, but no later than twenty-four (24) hours after PCS Nitrogen first knew of the event, and shall comply with the requirements of Appendix 1 (Facility Compliance Requirements), Attachment E (Critical Conditions and Temporary Measures).  Any violation of this notice requirement shall be deemed to terminate on the Day that both EPA and LDEQ have received actual notice of the violation or event from PCS Nitrogen or by other means.  This notice requirement does not relieve PCS Nitrogen of its obligation to comply with any federal and state laws applicable to the violation or event.  This

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

notice requirement is in addition to the requirement to provide notice of a violation of this

Consent Decree set forth in Paragraphs 32 and 33.

35.    All reports shall be submitted to the persons designated to receive Notices for

Plaintiffs in Section XIV (Notices) of this Consent Decree.  All notices and submittals to "EPA

and/or LDEQ" under this Consent Decree (including Appendices), other than those required by

this Section or that are submitted for approval pursuant to Paragraphs 22-25, may be submitted to

LDEQ only, provided that a copy of the cover letter identifying the notice or submittal is also

sent to EPA.  PCS Nitrogen also shall supply EPA with a copy of such notice(s) or submittal(s)

upon request by EPA.

36.    Each report submitted by PCS Nitrogen under this Section shall be signed by a

responsible corporate officer of PCS Nitrogen (as defined in 40 C.F.R. § 270.11(a)) and shall

include the following certification:

> I certify under penalty of law that this document and all
> attachments were prepared under my direction or supervision in
> accordance with a system designed to assure that qualified
> personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the
> system, or those persons directly responsible for gathering the
> information, the information submitted is, to the best of my
> knowledge and belief, true, accurate, and complete.  I am aware that
> there are significant penalties for submitting false information,
> including the possibility of fine and imprisonment for knowing
> violations.

This certification requirement does not apply to emergency notifications where compliance

would be impractical.

37.    The reporting requirements of this Consent Decree do not relieve PCS Nitrogen of

any reporting obligations required by the RCRA Requirements, or any other federal, Louisiana,

or local law, regulation, permit, or other requirement.  However, the reporting requirements of

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

this Consent Decree shall not require PCS Nitrogen to re-submit any report, plan, or information submitted by PCS Nitrogen to EPA and/or LDEQ prior to the Effective Date of this Consent Decree.

38.    Any information provided pursuant to this Consent Decree may be used by the Plaintiffs in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

39.    Unless otherwise expressly provided for in this Consent Decree (*e.g.,* Appendix 2, Paragraph 24), PCS Nitrogen shall be liable for stipulated penalties to the United States and LDEQ for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure) of this Consent Decree.  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

40.    <u>Civil Penalty</u>.  If PCS Nitrogen fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) of this Consent Decree when due, PCS Nitrogen shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late for the first ten (10) Days, together with Interest.  Thereafter, PCS Nitrogen shall pay $3,000 per Day for each Day that the payment is late, together with Interest.  Late payment of the federal civil penalty shall be made in accordance with Section IV (Civil Penalty), Paragraph 10, and late payment of the Louisiana penalty shall be made in accordance with Section IV (Civil Penalty), Paragraph 11. Stipulated penalties for late payment shall be paid in accordance with Paragraphs 44-50, below. All transmittal correspondence shall state that any such payment is for late payment of the civil

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

penalty due under this Consent Decree, or for stipulated penalties for late payment, as applicable, and shall include the identifying information set forth in Paragraph 10 or 11, above as applicable.

41.     <u>Compliance Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section V (Compliance Requirements):

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

42.     <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements of Section VII (Reporting Requirements) of this Consent Decree:

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $750 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $2,000 | 31st Day and beyond |

43.     Subject to the provisions of Paragraph 23(c), above, and Paragraph 46, below, stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

44.     PCS Nitrogen shall pay stipulated penalties to the United States and to LDEQ within twelve (12) Days of receipt of a written demand by either Plaintiff, subject to PCS

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

Nitrogen's right to invoke dispute resolution in accordance with Section X (Dispute Resolution). PCS Nitrogen shall pay fifty percent (50%) of the total stipulated penalty amount due to the United States and fifty percent (50%) to LDEQ. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

45. Each Plaintiff may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree. The determination by one Plaintiff not to seek stipulated penalties, or to subsequently waive or reduce the amount it seeks, shall not preclude the other Plaintiff from seeking the full amount of the stipulated penalties owed.

46. Stipulated penalties shall continue to accrue as provided in Paragraph 43, during any dispute resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties, or by a decision of the United States and/or LDEQ that is not subject to judicial review or appealed to the Court, PCS Nitrogen shall pay accrued penalties determined to be owing, together with Interest, to the United States and/or LDEQ within thirty (30) Days of the effective date of the agreement or the receipt of the United States' or LDEQ's decision or order.

b. If the dispute is appealed to the Court and the United States and/or LDEQ prevails in whole or in part, PCS Nitrogen shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the final appellate Court decision.

47. PCS Nitrogen shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

violation(s) the penalties are being paid.  PCS Nitrogen shall pay stipulated penalties owing to LDEQ in accordance with Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

48.     PCS Nitrogen shall not deduct stipulated penalties paid under this Section in calculating its Louisiana and federal income tax.

49.     If PCS Nitrogen fails to pay stipulated penalties according to the terms of this Consent Decree, PCS Nitrogen shall be liable for Interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or LDEQ from seeking any remedy otherwise provided by law for PCS Nitrogen's failure to pay any stipulated penalties.

50.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the Plaintiffs' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the Plaintiffs expressly reserve the right to seek any other relief they deem appropriate for Defendant's violation of this Consent Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation, or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.  FORCE MAJEURE

51.     Force majeure, for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of PCS Nitrogen, of any entity controlled by PCS Nitrogen, or of PCS Nitrogen's contractors that delays or prevents the performance of any

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

obligation under this Consent Decree despite PCS Nitrogen's best efforts to fulfill the obligation.

The requirement that PCS Nitrogen exercise best efforts to fulfill the obligation includes using

best efforts to anticipate any potential force majeure and best efforts to address the effects of any

potential force majeure (1) as it is occurring, and (2) following the potential force majeure such

that the delay and any adverse effects of the delay are minimized to the greatest extent possible.

Force majeure does not include PCS Nitrogen's financial inability to perform any obligation

under this Consent Decree.

52.     If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a force majeure event, PCS

Nitrogen shall provide notice orally or by electronic or facsimile transmission as soon as

possible, as provided in Section XIV (Notices) of this Consent Decree, but not later than seven

(7) Days after the time when PCS Nitrogen first knew that the event might cause a delay.  Within

ten (10) Days thereafter, PCS Nitrogen shall provide written notice to EPA and LDEQ with an

explanation and description of the reasons for the delay; the anticipated duration of the delay; all

actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of

any measures to be taken to prevent or mitigate the delay or the effect of the delay; PCS

Nitrogen's rationale for attributing such delay to a force majeure event if it intends to assert such

a claim; and a statement as to whether, in the opinion of PCS Nitrogen, such event may cause or

contribute to an endangerment to public health, welfare, or the environment.  PCS Nitrogen shall

include with any notice all available documentation supporting a claim that the delay was

attributable to a force majeure event.  PCS Nitrogen shall be deemed to know of any

circumstance of which PCS Nitrogen, any entity controlled by PCS Nitrogen, or PCS Nitrogen's

contractors knew or reasonably should have known.  Failure to comply with the above

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

requirements regarding an event shall preclude PCS Nitrogen from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 51 and whether PCS Nitrogen has exercised its best efforts under Paragraph 51, EPA may, in its unreviewable discretion, excuse in writing PCS Nitrogen's failure to submit timely notices under this Paragraph.

53.     If EPA, after consultation with LDEQ, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after consultation with LDEQ, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after consultation with LDEQ, agrees that the delay is attributable to a force majeure event, EPA will notify PCS Nitrogen in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event. If EPA, after consultation with LDEQ, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify PCS Nitrogen in writing of its decision.

54.     If EPA has not communicated its decision to PCS Nitrogen within sixty (60) Days of the force majeure notice required by Paragraph 52, PCS Nitrogen may make a written request to EPA Region 6 and LDEQ for a meeting to resolve the matter. EPA and LDEQ agree to schedule such a meeting upon request by PCS Nitrogen.

55.     If PCS Nitrogen elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

EPA's notice.  In any such proceeding, PCS Nitrogen shall have the burden of demonstrating by

a preponderance of the evidence that the delay or anticipated delay has been or will be caused by

a force majeure event, that the duration of the delay or the extension sought was or will be

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the

effects of the delay, and that PCS Nitrogen complied with the requirements of Paragraphs 51 and

52, above.  If PCS Nitrogen successfully carries this burden, the delay at issue shall not

constitute a violation by PCS Nitrogen of the affected obligation of this Consent Decree

identified to EPA and the Court.

## X.  DISPUTE RESOLUTION

56.     Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve all disputes

arising under or with respect to this Consent Decree.  PCS Nitrogen's failure to seek resolution

of a disputed issue under this Section shall preclude PCS Nitrogen from raising any such issue as

a defense to an action by the United States or LDEQ to enforce any obligation of PCS Nitrogen

arising under this Consent Decree.

57.     <u>Informal Dispute Resolution</u>.  Any dispute subject to dispute resolution under this

Consent Decree shall first be the subject of informal negotiations, which may include any third-

party assisted, non-binding alternative dispute resolution process agreeable to the Parties.  PCS

Nitrogen shall submit a written Notice of Dispute to both the United States and LDEQ within

thirty (30) Days after receiving written notice from EPA or LDEQ of a decision that PCS

Nitrogen disputes.  The dispute shall be considered to have arisen on the later of the dates that

the United States or LDEQ receives a written Notice of Dispute.  Such Notice of Dispute shall

clearly state the matter in dispute.  The period of informal negotiations shall not exceed twenty

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

(20) Days from the date that the dispute arises, unless that period is modified by written

agreement between the United States, after consultation with LDEQ, and PCS Nitrogen.  If the

Parties cannot resolve a dispute by informal negotiations, then the written position of EPA as

conveyed to PCS Nitrogen, after consultation with LDEQ, shall be considered binding, unless

PCS Nitrogen invokes formal dispute resolution procedures as provided in the following

Paragraph.

     58.    <u>Formal Dispute Resolution</u>.  If PCS Nitrogen elects to invoke formal dispute

resolution, PCS Nitrogen shall, within thirty (30) Days after the conclusion of the informal

negotiation period, submit to EPA and LDEQ a written Statement of Position regarding the

matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual

data, analysis, or opinion supporting PCS Nitrogen's position and any supporting documentation

relied upon by PCS Nitrogen.

     59.    EPA, after consultation with LDEQ, shall submit its Statement of Position within

forty-five (45) Days of receipt of PCS Nitrogen's Statement of Position.  The EPA Statement of

Position shall include or clearly reference, but need not be limited to, any factual data, analysis,

or opinion supporting that position and any supporting documentation relied upon by EPA.

Where appropriate, EPA may allow submission of supplemental statements of position by the

Parties to the dispute.  The EPA Statement of Position shall be binding on PCS Nitrogen, unless

PCS Nitrogen files a motion for judicial review of the dispute in accordance with the following

Paragraph.

     60.    Unless expressly stated otherwise in this Consent Decree, PCS Nitrogen may seek

judicial review of the dispute by filing with the Court and serving on the United States and

LDEQ, in accordance with Section XIV (Notices) of this Consent Decree, a motion requesting

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

judicial resolution of the dispute.  The motion must be filed within thirty (30) Days of receipt of the EPA Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of PCS Nitrogen's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

61.    The United States, after consultation with LDEQ, shall respond to PCS Nitrogen's motion within the time period allowed by the Local Rules of this Court.  PCS Nitrogen may file a reply memorandum to the extent permitted by the Local Rules.

62.    <u>Standard of Review</u>.

a.    <u>Disputes Concerning Matters Accorded Record Review</u>.  In any dispute brought under this Section pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the Work performed pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, EPA, in consultation with LDEQ, shall compile an administrative record of the dispute containing all Statements of Position, including supporting documentation and referenced data or information, and PCS Nitrogen shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    Except as provided in Paragraph 87, in any other dispute brought under this Section, PCS Nitrogen shall bear the burden of demonstrating that its position complies with and furthers the objectives of this Consent Decree.

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

63.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of PCS Nitrogen under this Consent Decree, unless and until final resolution of the dispute so provides or unless ordered by the Court.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 46.  If PCS Nitrogen does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.  INFORMATION COLLECTION AND RETENTION

64.    The United States, LDEQ, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into PCS Nitrogen's Facility, at all reasonable times, upon presentation of appropriate identification, to:

      a.    monitor the progress of activities required under this Consent Decree;

      b.    verify any data or information submitted to the United States or LDEQ in accordance with the terms of this Consent Decree;

      c.    obtain samples and, upon request, splits of any samples taken by PCS Nitrogen or its representatives, contractors, or consultants;

      d.    obtain documentary evidence, including photographs and similar data;

      e.    assess PCS Nitrogen's compliance with this Consent Decree; and

      f.    conduct, direct or review Work pursuant to Section VI (Work Take-over) of this Consent Decree.

65.    Upon request, PCS Nitrogen shall provide EPA, LDEQ, and their authorized representatives splits of any samples taken by PCS Nitrogen.  Upon request, EPA and LDEQ

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

shall provide PCS Nitrogen splits of any samples taken by EPA, LDEQ, and their authorized representatives.

66.    PCS Nitrogen shall retain, and shall require its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, emails, or other information in electronic form, including any documents, records, data or other information underlying the submission of any report required pursuant to Section VII (Reporting Requirements)) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, that relate to PCS Nitrogen's performance of its obligations under this Consent Decree for a period of five (5) years after the creation of such documents, records, or other information.  This information retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information retention period, upon request by the United States or LDEQ, PCS Nitrogen shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

67.    At the conclusion of the information retention period provided in the preceding Paragraph, PCS Nitrogen shall notify the United States and LDEQ at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or LDEQ, PCS Nitrogen shall deliver any such documents, records, or other information to EPA or LDEQ.  PCS Nitrogen shall not dispose of materials following the expiration of its five (5) year retention period more often than once a year.

68.    In connection with any request for documents, records, or other information pursuant to this Consent Decree, PCS Nitrogen may assert that certain documents, records, or

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

other information are privileged under the attorney-client privilege or any other privilege

recognized by federal law or Louisiana law, provided that PCS Nitrogen shall not assert a legal

privilege for any data, records, or information (excluding legal advice) generated or received in

connection with PCS Nitrogen's obligations pursuant to the requirements of this Consent Decree.

If PCS Nitrogen asserts a privilege, it shall provide the following:  (1) the title of the document,

record, or information; (2) the date of the document, record, or information; (3) the name and

title of each author of the document, record, or information; (4) the name and title of each

addressee and recipient; (5) a description of the subject of the document, record, or information;

and (6) the privilege asserted by PCS Nitrogen.  If Plaintiffs and PCS Nitrogen disagree as to

whether a particular document or record is privileged, PCS Nitrogen shall deliver such document

or record to the United States or LDEQ unless it invokes dispute resolution pursuant to Section X

(Dispute Resolution), in which case, PCS Nitrogen shall not have an obligation to deliver such

document or record unless and until a final determination is made, pursuant to the procedures set

forth in Section X (Dispute Resolution), that such document or record is not privileged.

69.     PCS Nitrogen may also assert that information provided pursuant to this Consent

Decree is protected as Confidential Business Information ("CBI") under the criteria and

procedures set forth in 40 C.F.R. Part 2, Subpart B, or La. R.S. 30:2030 and LAC 33:I. Chapter

5, provided that:  (a) PCS Nitrogen shall not assert a CBI claim with respect to any physical,

sampling, monitoring, or analytical data other than data related to:  (i) development of new or

modified products; (ii) development of new or modified production processes; (iii) production

materials or analyses collected for quality control or other manufacturing purposes; or (iv)

analyses undertaken for competitive business purposes; and (b) PCS Nitrogen shall not assert a

CBI claim for Financial Assurance information required to be provided pursuant to Paragraphs

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

10.e, 15.e, and 21 of Appendix 2 of this Consent Decree unless specifically authorized by those provisions.  If PCS Nitrogen claims any information related to Financial Assurance submissions and Cost Estimates is CBI, PCS Nitrogen shall submit two versions, one version with the CBI material redacted, and so identified in the document, which will be publicly available, and the second (unredacted) version that contains the CBI material.

70.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or LDEQ pursuant to applicable federal or Louisiana laws, regulations, or permits, nor does it limit or affect any duty or obligation of PCS Nitrogen to maintain documents, records, or other information imposed by applicable federal or Louisiana laws, regulations, or permits.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

71.    This Consent Decree resolves the civil claims of the United States and LDEQ against PCS Nitrogen, for the violations alleged in the Complaint filed in this action, through the date of the lodging of the Consent Decree.  This Consent Decree also resolves such claims, if any, of the United States and LDEQ against the corporate officers, directors, and employees, acting in their capacities as such, of PCS Nitrogen, but only as to liability arising out of PCS Nitrogen's liability.  For continuing violations alleged in the Complaint, provided that PCS Nitrogen complies with this Consent Decree, as set forth in Paragraph 73, from the date of lodging of the Consent Decree through its Effective Date, these claims shall also be resolved through the Effective Date of this Consent Decree, as of the Effective Date; and, provided that PCS Nitrogen complies with the Consent Decree from the Effective Date of this Consent Decree through the date of termination of this Consent Decree pursuant to Section XVIII (Termination), these claims shall be finally resolved as of the date the Consent Decree terminates.

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

72.     Provided that PCS Nitrogen is in compliance with this Consent Decree, and subject to the reservation below in this Paragraph, Plaintiffs covenant not to sue or take administrative action, under Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), a state law counterpart, or as to LDEQ, applicable requirements of the Louisiana Solid Waste Management and Resource Recovery Law (La. R.S. 30:2151 *et seq.*) and the regulations promulgated thereunder (LAC 33:VII, Subpart 1), and the Louisiana Hazardous Waste Control Law (La. R.S. 30:2171 *et seq.*) and the regulations promulgated thereunder (LAC 33:V. Subpart 1), seeking to require PCS Nitrogen's Facility to comply with the RCRA Requirements or state regulations, with respect to the generation, treatment, Storage, Transport, management, and disposal of Bevill-Excluded Wastes that have been commingled with hazardous wastes or otherwise managed in violation of law as alleged in the Complaint, and that are resolved in accordance with Paragraph 71 of this Consent Decree.  Nothing in this Paragraph, however, shall affect Plaintiffs' rights to determine the need for and require Corrective Action or groundwater monitoring, pursuant to their reserved authorities under federal, state, and local laws.

73.     The resolution under this Section XII (Effect of Settlement/Reservation of Rights) of the Plaintiffs' civil claims set forth in the Complaint and the Plaintiffs' covenants not to sue are expressly conditioned upon PCS Nitrogen's timely and satisfactory compliance with the requirements of this Consent Decree.

74.     The United States and LDEQ reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, and PCS Nitrogen reserves all legal and equitable defenses available to it in the defense of any such enforcement.  This Consent Decree shall not be construed to limit the rights of the United States or LDEQ to obtain penalties or injunctive relief under the federal and Louisiana environmental statutes or their implementing regulations,

48

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

or under other federal or Louisiana law, regulations or permit conditions, including Section

3008(h) of RCRA, 42 U.S.C. § 6928(h), except as expressly specified in Paragraphs 71 and 72,

and PCS Nitrogen in any such action shall not assert any defense based upon the contention that

such claims raised by Plaintiffs were or should have been brought in the instant case under

principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-

splitting, or other such defenses.  The United States and LDEQ further retain all authority and

reserve all rights to take any and all actions authorized by law to protect human health, welfare,

and the environment, including Corrective Action and groundwater monitoring, and all legal and

equitable remedies to address any imminent and substantial endangerment to the public health or

welfare or the environment arising at, or posed by, the Facility, whether related to the violations

addressed in this Consent Decree or otherwise.

   75. This Consent Decree is not a permit, or a modification of any permit, under any

federal, state, or local law or regulation.  While this Consent Decree resolves the Parties' dispute

regarding the violations alleged in the Complaint as set forth in Paragraph 71, compliance with

the terms of this Consent Decree does not guarantee compliance with all applicable federal, state,

or local laws or regulations.  Except as set forth in Paragraphs 18, 19, 27, 71 and 72 of this

Consent Decree, PCS Nitrogen is not relieved of its obligation to achieve and maintain

compliance with all applicable federal, state, and local laws, regulations, and permits; PCS

Nitrogen's compliance with this Consent Decree shall be no defense to any action commenced

by Plaintiffs pursuant to any such law, regulation, or permit, except as expressly specified in

Paragraphs 18, 19, 27, 71 and 72.

   76. This Consent Decree does not limit or affect the rights of the Parties against any

third parties (persons not a Party to this Consent Decree), nor does it limit the rights of third

parties except as otherwise provided by the doctrine of federal preemption or by other applicable principles of law or precedent.

77.     This Consent Decree shall not be construed to create rights or obligations in, or grant any cause of action to, any third party.

78.     Nothing in the Complaint filed in this action or in this Consent Decree, including the execution and implementation of this Consent Decree, shall constitute an admission by PCS Nitrogen of any violation of the RCRA Requirements or of any of the allegations of the Complaint.  PCS Nitrogen reserves all rights to dispute the factual and legal representations of the Complaint and Consent Decree except in an action to enforce this Consent Decree by a Party, including judicial review of a dispute under this Consent Decree.  The terms of this Consent Decree may not be used as evidence in any litigation between the Parties except (a) pursuant to Section X (Dispute Resolution), (b) in an action to enforce this Consent Decree, or (c) in an action by Plaintiffs in which PCS Nitrogen asserts a defense based on this Consent Decree.

## XIII.   COSTS

79.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and LDEQ shall be entitled to collect costs (including attorneys' fees) incurred in any action necessary to access Financial Assurance pursuant to Paragraph 19 and Appendix 2 (Financial Assurance) of this Consent Decree, or to collect any portion of the civil penalty or any stipulated penalties or other costs due under this Consent Decree but not paid by PCS Nitrogen.

80.     <u>LDEQ Costs Incurred in Oversight of Consent Decree</u>.

a.     LDEQ may employ, arrange for, or contract with a qualified person to perform oversight tasks related to the Work performed under this Consent Decree.  PCS

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

Nitrogen shall bear reasonable and necessary costs incurred by LDEQ for oversight related to the Work performed under this Consent Decree following the Effective Date and as allowed by law, but annual invoices shall not exceed $100,000/year, subject to annual increases for inflation and without prejudice to LDEQ's right to recover all oversight costs allowed under La. R.S. 30:2025(E) and PCS Nitrogen's right to object to such costs.

   b. LDEQ shall keep accurate books and accounts of oversight costs.  Such books and accounts may be audited by PCS Nitrogen upon written request annually from the Effective Date of this Consent Decree, or at the end of each calendar-quarter if deemed appropriate by LDEQ.  LDEQ shall submit to PCS Nitrogen an invoice for oversight costs that LDEQ asserts are recoverable under Paragraph 80(a).  The invoice shall describe for each person and for each Day the oversight work for which LDEQ seeks reimbursement in sufficient detail to document the amount of time spent on oversight work and to describe the oversight work performed during the time documented.  If PCS Nitrogen disagrees with this invoice on the basis that costs incurred by LDEQ are not reasonable, not necessary, or excessive or the invoice fails to provide sufficient information as described above, then PCS Nitrogen may invoke Section X (Dispute Resolution) of this Consent Decree.  PCS Nitrogen shall, within sixty (60) Days of receiving the invoice, unless it has invoked Section X (Dispute Resolution) before this sixty (60) Day period has passed, remit a check or electronic payment for the amount of those costs made payable to the Louisiana Department of Environmental Quality.  Checks shall specifically reference the Facility and invoice number, and be mailed to the following address:

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

> Accountant Administrator
> Financial Services Division
> Office of Management and Finance
> Louisiana Department of Environmental Quality
> P.O. Box 4303
> Baton Rouge, LA  70821-4303

If electronic payment via wire or ACH is preferred, please contact Anne Fulton or Theresa

Delafosse at (225) 219-3865 for further instructions on electronic payment procedures.  A copy

of the check or payment confirmation and transmittal letter shall be mailed to:

> Cost Recovery Officer
> Office of Environmental Compliance
> Remediation Services Division
> Louisiana Department of Environmental Quality
> P.O. Box 4314
> Baton Rouge, LA  70821-4314

81.     Nothing in Paragraph 80 shall prejudice LDEQ's right to bring an action against

any party, including PCS Nitrogen, under the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), for recovery of any future costs incurred by

LDEQ related to this Consent Decree and not reimbursed by PCS Nitrogen.

## XIV.   NOTICES

82.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, including submissions made in accordance

with Section VII (Reporting Requirements), they shall be made electronically, unless otherwise

requested by either LDEQ or EPA, and addressed as follows:

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Deborah Reyher, Esq.
Senior Counsel
Re: DOJ No. 90-7-1-08388/22
Deborah.Reyher@usdoj.gov

Courier
Environment & Natural Resources Division
U.S. Department of Justice
150 M St., NE
ENRD Mailroom, Suite 2.900
Washington, DC 20002

USPS
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611

Overnight Mail and non-USPS Deliveries
Environment and Natural Resources Division
Office of Administrative Services
Executive Office
4CON Building
150 M Street, N.E., Room 2.1124
Washington, D.C. 20002
(202) 616-3133

United States Attorney for the Middle District of Louisiana
777 Florida Street
Suite 208
Baton Rouge, LA 70801
Phone: (225) 389-0443
Fax: (225) 389-0685

and to EPA, below.

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

<u>To EPA</u>:

Chief
Waste Enforcement Branch
Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500 (ECDS)
Dallas, TX 75270
Phone: (214) 665- 6508
Fax: (214) 665-2182
Osbourne.Margaret@EPA.GOV

Bethany Russell (or successors identified by EPA in writing)
Office of Civil Enforcement
Mail Code 2249A
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., NW
Washington, D.C. 20460
Phone: (202) 564-1849
Fax: (202) 564-0019
russell.bethany@epa.gov

<u>To LDEQ</u>:

Yolunda Righteous
Administrator
LDEQ Waste Permits Division
P.O. Box 431
Baton Rouge, LA 70821-4313
Phone: 225-219-3386
Fax: 225-219-3474
yolunda.righteous@la.gov

Angela Marse
Enforcement Administrator
Office of Environmental Compliance
P.O. Box 4312
Baton Rouge, LA 70821
angela.marse@la.gov

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

           Oscar Magee, Trial Attorney
           Amber Litchfield, Attorney Supervisor
           Office of the Secretary
           Legal Affairs Division
           Louisiana Dept. of Environmental Quality
           P.O. Box 4302
           Baton Rouge, Louisiana 70821-4302
           Phone:  (225) 219-3985
           Fax:  (225) 219-4068
           oscar.magee@la.gov
           amber.litchfield@la.gov

           <u>To PCS Nitrogen</u>:

           Jeffrey S. Grussing (or successor Senior Director, Environment)
           PCS Nitrogen Fertilizer, L.P.
           5296 Harvest Lake Drive, 4th Floor
           Loveland, CO  80538
           Phone:  (970) 613-3140
           Jeff.grussing@nutrien.com

with a copy to:

           Jessica E. DeMonte, Esq. (or successor Assistant General Counsel, Nitrogen &
                Phosphate)
           PCS Nitrogen Fertilizer, L.P.
           5296 Harvest Lake Drive, 4th Floor
           Loveland, CO  80538
           Phone:  (847) 849 4291
           Jessica.demonte@nutrien.com

           Jane Borthwick Story, Esq.
           Jones Day
           500 Grant St., Suite 4500
           Pittsburgh, PA  15219
           Phone:  (412) 394-7294
           jbstory@jonesday.com

83.    Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

84.     Notices submitted pursuant to this Section shall be deemed submitted upon electronic transmission, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.   EFFECTIVE DATE

85.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.  Notwithstanding the foregoing, PCS Nitrogen hereby agrees that it shall be bound from the date of execution of this Consent Decree to perform obligations scheduled in this Consent Decree to occur prior to the Effective Date.

## XVI.   RETENTION OF JURISDICTION

86.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, pursuant to Section XVIII (Termination), for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections X (Dispute Resolution) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII.   MODIFICATION

87.     The terms of this Consent Decree may be modified only by a subsequent written agreement of the Parties to this Consent Decree as set forth herein.  Except as specified in Paragraph 103, any modifications to the provisions of Appendices 1 through 3 hereto, and any other modifications to any other provisions of this Consent Decree that do not constitute a material change to this Consent Decree, may be made without approval by the Court upon written agreement between PCS Nitrogen and the United States, after consultation with LDEQ. Any such changes shall become enforceable under this Consent Decree upon execution by PCS

56

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

Nitrogen and the United States (for changes to the Consent Decree or Appendices 1 through 3) and shall be made available to the public by EPA and LDEQ (except to the extent such changes contain information determined to be CBI pursuant to Paragraph 69 and 40 C.F.R. Part 2) and shall periodically be filed by the United States with the Court. Any other modifications agreed to by the Parties shall be effective only upon approval by the Court. Except as otherwise provided in this Paragraph and in Paragraph 88, a Party's refusal to agree to a modification of this Consent Decree shall be subject to dispute resolution, but a Party seeking judicial review of such a refusal shall bear the burden of demonstrating that it is entitled to the requested modification based on a significant change in factual conditions or the law or other reason that would make inequitable the continued application of the Consent Decree without the modification sought.

88.     In the event that a potential transferee under Section II (Applicability) of this Consent Decree has agreed to become a party to this Consent Decree and to be subject to all its terms and provisions, it may do so upon written approval of the United States pursuant to Section II (Applicability) of this Consent Decree and Section XVII (Modification), without further order from the Court, in which event a supplemental signature page will be affixed to this Consent Decree and filed with the Court.

## XVIII.  TERMINATION

89.     <u>Periodic Review of Work Status</u>.  At least once every three (3) years, and more often if the Parties so agree, PCS Nitrogen may call for a meeting to review the status of the Work and to evaluate whether discrete portions of the Work have either been completed or may be accomplished and supervised under an EPA or LDEQ administrative order or permit in lieu of this Consent Decree. If all Parties agree to such a modification, such agreement shall be

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

memorialized in a written modification to this Consent Decree pursuant to Section XVII

(Modification) and shall not require judicial approval.  If the Parties agree that such

modifications allow this Consent Decree to be terminated, the Parties shall submit, for the

Court's approval, a joint stipulation terminating the Consent Decree.  The Parties' inability to

reach agreement under this Paragraph shall not be subject to dispute resolution or judicial

review.

      90.    <u>Completion of Work</u>.  Within ninety (90) Days after PCS Nitrogen notifies EPA

and LDEQ that PCS Nitrogen has concluded that all Work required under this Consent Decree

has been fully performed at the Facility, EPA and/or LDEQ may conduct an inspection of the

Facility to be attended by EPA, LDEQ, and PCS Nitrogen at a mutually agreeable time.

Following the inspection, and after correction of any problems or deficiencies noted by EPA in

consultation with LDEQ, PCS Nitrogen shall submit one or more written reports by a Third-

Party Engineer, in the relevant technical field, certifying compliance with Section V

(Compliance Requirements) of this Consent Decree, and that the Work has been completed in

full satisfaction of the requirements of this Consent Decree.  The report(s) shall indicate the case

name and civil action number, and shall be submitted, together with a request for

Acknowledgment of Completion as set forth in Paragraph 92, in accordance with Section VII

(Reporting Requirements) of this Consent Decree.  Third-Party Engineer certification of any of

the written reports may be waived at EPA's discretion, after consultation with LDEQ.  If,

following PCS Nitrogen's notice under this Paragraph, EPA and LDEQ notify PCS Nitrogen that

EPA and LDEQ decline the opportunity to conduct an inspection of the Facility, or if EPA and

LDEQ do not respond within ninety (90) Days of the notice, PCS Nitrogen shall submit the

report(s) specified in this Paragraph in support of a request for Acknowledgment of Completion.

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

Nothing in this Paragraph restricts Plaintiffs' rights of entry and access to information pursuant to Section XI (Information Collection and Retention) of this Consent Decree.

91.     If, after review of the written report(s) and certification and consultation with LDEQ, EPA determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify PCS Nitrogen in writing of the activity(ies) and/or obligation(s) that must be undertaken to complete the Work.  EPA will set forth in the notice a schedule for performance of the activity(ies) and/or obligation(s) required under the Consent Decree or will require PCS Nitrogen to submit a schedule for EPA approval pursuant to Section V (Compliance Requirements) of this Consent Decree.  PCS Nitrogen shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to PCS Nitrogen's right to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) of this Consent Decree.

92.     If EPA concludes, based on the initial or any subsequent request for an Acknowledgment of Completion by PCS Nitrogen, and after reasonable opportunity for review and comment by LDEQ, that the Work has been fully performed in accordance with this Consent Decree, EPA will so notify PCS Nitrogen in writing, which notice shall constitute the Acknowledgment of Completion.

93.     Termination.  After PCS Nitrogen has completed the requirements set forth in Paragraphs 90 and 91 of this Section, obtained an Acknowledgment of Completion, complied with all other requirements of this Consent Decree, and paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, PCS Nitrogen may serve upon the United States and LDEQ a Request for Termination, stating that PCS Nitrogen has satisfied those requirements, together with all necessary supporting documentation.

59

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

94.     Following receipt by the United States and LDEQ of PCS Nitrogen's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether PCS Nitrogen has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States, after consultation with LDEQ agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

95.     If the United States, after consultation with LDEQ, does not agree that the Consent Decree may be terminated, PCS Nitrogen may invoke dispute resolution under Section X (Dispute Resolution) of this Consent Decree.  However, all time periods and deadlines established under Section X (Dispute Resolution) shall be extended by sixty (60) Days, or more, by the agreement of the Parties.

## XIX.   PUBLIC PARTICIPATION

96.     This Consent Decree shall be lodged with the Court for a period of not less than forty-five (45) Days for public notice and comment in accordance with 28 C.F.R. § 50.7 and La. R.S. 30:2050.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  PCS Nitrogen consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States, or LDEQ, has notified PCS Nitrogen in writing that it no longer supports entry of the Consent Decree.  Further, the parties agree and acknowledge that final approval by LDEQ and entry of this Consent Decree is subject to the requirements of La. R.S. 30:2050.7, which provides for public notice of this Consent Decree in the newspapers of general circulation and

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

the official journal of the parish in which the Facility is located, an opportunity for public comment, consideration of any comments, and concurrence by the State of Louisiana Attorney General.  Evidence of final approval of this Consent Decree by LDEQ shall be LDEQ's execution of a Motion to Enter this Consent Decree.  LDEQ reserves the right to withdraw or withhold consent and will not join in the filing of a Motion to Enter this Consent Decree if the State of Louisiana Attorney General raises objections or if comments regarding this Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper or inadequate.

## XX.  SIGNATORIES/SERVICE

97.     Each undersigned representative of PCS Nitrogen, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, or his or her designee, and the Secretary of the Louisiana Department of Environmental Quality, or his or her designee, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this Consent Decree according to the terms provided herein.

98.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  PCS Nitrogen agrees to accept service of process by email or overnight delivery (UPS/Fed Ex) with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  Defendant need not file an answer to the Complaint unless or until the Court expressly declines to enter this Consent Decree.

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

## XXI.   INTEGRATION

99.     This Consent Decree, including its Appendices, constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the Appendices, which are attached to and incorporated in this Consent Decree, and any permits or administrative orders required by or incorporated by reference into this Consent Decree or the Appendices, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXII.   26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

100.     For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C.§ 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2)(iii)(A), performance of the obligations set forth in Section II (Applicability), Paragraph 6; Section V (Compliance Requirements), Paragraphs 13-25; Section VII (Reporting Requirements), Paragraphs 32-37; Section XI (Information Collection and Retention), Paragraphs 64-68; and Appendices 1, 2 and 3, is restitution, remediation, or required to come into compliance with the law.

## XXIII.   FINAL JUDGMENT

101.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, LDEQ and PCS Nitrogen.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

## XXIV.  APPENDICES

102.    The following Appendices are attached to and part of this Consent Decree:

Appendix 1 contains the Facility Compliance Requirements, and includes:

> Attachment A (Site Map of the Facility);
>
> Attachment B (Figure of Phosphogypsum Stack System (with unit and equipment
>
> designation));
>
> Attachment C (Operational Requirements During Phosphogypsum Stack System
>
> Closure);
>
> Attachment D (Closure of Phosphogypsum Stack Systems or Components);
>
> Attachment E (Critical Conditions and Temporary Measures);
>
> Attachment F (Definitions for Attachments to the Consent Decree);
>
> Attachment G (Phosphogypsum Stack System Permanent Closure Plan Checklist);

Appendix 2 establishes Financial Assurance Requirements; and includes:

> Attachment A (CFO Certification);
>
> Attachment B (Permanent Closure Plan, including Cost Estimate);
>
> Attachment C (Summary Costs for Phosphogypsum Stack System Closure and Long-
>
> Term Care);
>
> Attachment D (Financial Mechanisms);
>
> Attachment E (Type B Financial Metrics Charts);

Appendix 3 is the RCRA Project Narrative and Compliance Schedule; and

Appendix 4 lists the Completed Activities.

103.    Changes to the schedules and technical requirements of Appendices 1 and 3, and

Attachment B of Appendix 2, and schedule changes to Appendix 2, may be made from time to

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

time upon written agreement of EPA, LDEQ, and PCS Nitrogen, and are not considered material

modifications of this Consent Decree or modifications of permits or plans duly issued or

approved pursuant to state law.

 Dated and entered this __ day of _____, 2022.

                                              _____
                                              UNITED STATES DISTRICT JUDGE
                                              MIDDLE DISTRICT OF LOUISIANA

Consent Decree: U.S. and LDEQ v. PCS Nitrogen


WE HEREBY CONSENT to the entry of the Consent Decree in United States et al. v. PCS Nitrogen Fertilizer, L.P., Civil Action No. _____, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.


FOR THE UNITED STATES OF AMERICA:


Date: July 13, 2022

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice



By: /s/ *Deborah M. Reyher*

Deborah M. Reyher, New York Bar 1953553
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-4113
E-mail: deborah.reyher@usdoj.gov

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. PCS Nitrogen Fertilizer, L.P.</u>, Civil Action No. _____, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

RONALD C. GATHE, JR.
UNITED STATES ATTORNEY

By: <u>/s/ Davis Rhorer Jr.</u>
Davis Rhorer Jr., LBN 37519
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
E-mail: davis.rhorer@usdoj.gov

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

WE HEREBY CONSENT to the entry of the Consent Decree in United States et al. v. PCS Nitrogen Fertilizer, L.P., Civil Action No. _____, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

LAWRENCE STARFIELD

Digitally signed by LAWRENCE STARFIELD
Date: 2022.07.08 17:29:03 -04'00'

Date: _____

LAWRENCE E. STARFIELD
Acting Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

LAURA WELLES
Attorney-Advisor
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20460

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. PCS</u> <u>Nitrogen Fertilizer, L.P.,</u> Civil Action No. _____, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date:_____

JAMES McGUIRE
Digitally signed by JAMES MCGUIRE
Date: 2022.06.29 15:01:52 -05'00'

JAMES McGUIRE
Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500
Dallas, Texas 75270-2102

Date:_June 29, 2022_____

Digitally signed by CHERYL SEAGER
Date: 2022.06.29 14:20:51 -05'00'

Cheryl T. Seager, Director
Enforcement and
    Compliance Assurance Division
 U.S. EPA, Region 6

Consent Decree: U.S. and LDEQ v. PCS Nitrogen

WE HEREBY CONSENT to the entry of the Consent Decree in United States and LDEQ v. PCS Nitrogen Fertilizer, L.P., Civil Action No. _____, subject to the public notice and comment requirements.

FOR LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY:

Dated: _____7 - 7 - 2022_____

Celena J. Cage
Assistant Secretary
Office of Environmental Compliance
Louisiana Dept. of Environmental Quality

Dated: _____7 - 7 - 2022_____

Oscar Magee, Trial Attorney (#32302)
Amber Litchfield, Attorney Supervisor (#33866)
Office of the Secretary
Legal Affairs Division
Louisiana Dept. of Environmental Quality
P.O. Box 4302
Baton Rouge, Louisiana 70821-4302
Phone:  (225) 219-3985
Fax:  (225) 219-4068

69

Consent Decree: <u>U.S. and LDEQ v. PCS Nitrogen</u>


WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. PCS</u> <u>Nitrogen Fertilizer, L.P.,</u> Civil Action No. _____, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.


FOR PCS NITROGEN FERTILIZER, L.P.

Date: ___7/8/22

Raef Sully
President, PCS Nitrogen Fertilizer
Operations, Inc., (On behalf of and as
General Partner of PCS Nitrogen Fertilizer,
L.P.)
500 Lake Cook Road, Suite 150
Deerfield, IL  60015